Good morning, your honors. May it please the court. My name is Tiffany Santos and I'm appearing on behalf of the Alta Loma School District. If I may, your honors, I would like to reserve five minutes for rebuttal. All right, counsel, please be reminded that the time reflected is your total time remaining. Yes, your honor. Your honors, we are here today to address the second level of appeal of an administrative special education due process hearing regarding a narrow issue, whether the district acted without undue delay when it filed for due process after the parties had reached impasse concerning a private assessor whose rates for an independent educational evaluation exceeded the district's cost criteria by nearly 150 percent. Although I can appreciate the expertise of the district court judge initially reviewing the administrative law judge's decision, in this case, your honors, the district court simply got it wrong. I'd like to first address the court's November 18, 2020 order requesting that the parties address the Second Circuit's recent opinion of D.S. v. Trumbull Board of Education. And in that case, your honors, the Second Circuit held that a functional behavior assessment was not an evaluation that triggered the parents' right to obtain an independent educational evaluation at public expense. The Second Circuit essentially determined that parents are not entitled to an independent educational evaluation at public expense unless they disagree with a district of initial evaluation or re-evaluation of the student. The Trumbull case supports the district's contention that in this case, parents were not entitled to an IEE at public expense as the district did not have the opportunity to conduct a comprehensive evaluation, much less a visual processing assessment of students with which parents could disagree. Therefore, the district was not obligated under Section 305.02 of Title 34, the Code of Federal Regulations, to file for due process or fund an independent educational evaluation. That right to an IEE is conditioned on an actual disagreement with an evaluation that the school district has conducted. Thus, this right depends on the parents' disagreement with an existing evaluation obtained by the district. This interpretation is reinforced by the specific language of 300.502 that allows districts to file for hearings so that they can demonstrate the contemplate that a school district will have an opportunity in the first instance to conduct its own evaluation, and that only then, if parents disagree with that evaluation, should a district have to pay for an IEE or defend its evaluation. What do we do with that here where the district offered to pay for the evaluation that the parents wanted, even though it seems not only was a comprehensive evaluation not done yet, but even the specific evaluation wasn't done yet? That was the point. The parents wanted this specific type of evaluation that wasn't included in the school district's evaluation plan. We don't have anything comprehensive. We don't have anything specific for the parents to look at to go ahead and offer to pay for the evaluation the parents wanted. What do we do with that? You're right, Your Honor. Throughout this process, the district was attempting to work collaboratively with the parents, and it had agreed to fund the Visual Processing IEE and other IEEs, even though it didn't have an obligation to do so. But just because the district agreed to fund that IEE, it was not then obligated to file for due process. The district chose to file for due process because the parties had reached impasse regarding the parents' chosen assessor and whether that particular assessor met the criteria. It sought to resolve this issue by informally trying to resolve it with the parents, and when it couldn't, it filed for due process. And just because the district agreed to fund it doesn't necessarily mean it was then obligated to file for due process. Trumbull also reaffirmed that an appellate court is not required to accept a concession when the law and the record do not justify it. And in this case, the student alleged the district did not raise the issue that the district was precluded from raising that argument on appeal. However, the decision in Trumbull lends support to the contrary in that the district would not be precluded from contending on appeal, that the district had no obligation under Section 305.02 to file for due process or fund an IEE in Visual Processing, as again, the undisputed facts indicate that it did not have an opportunity to conduct an evaluation of the district. And so under the plain language of 305.02, without such an assessment of the student, parents were not entitled to an IEE at public expense and the district had no duty to file for due process. Something that has not made any sense to me about this case, and I can't find an answer to this in the record, maybe you can help me, is it seems like the parties just couldn't So the parents wanted an evaluation by a particular doctor. Everybody gets the doctor's rate sheet, and it has a range, and it's not specific as to what is actually going to be done in this case. And the district looks at that and the range exceeds the cost cap. And so it says, you know, we can't do this. Well, it turns out months later that when the evaluation actually gets done, the cost for what actually needs to happen in this case is within the cost cap. Why didn't that get figured out sooner? I mean, wouldn't that have just been a call to this doctor saying this is what this student needs? How much does that cost? Not how much does the range of services you provide cost? Why didn't that happen? And whose fault was it to not get that specific information related to this student? I don't think that. I think that in the record on the invoice that Dr. Hastafi had submitted with regard to the evaluation he had conducted that he even anticipated that the cost of his IEE would be what it was. And I think what it stated on the invoice is that because of the student's disabilities, he was unable to administer certain having done the assessment that we would not have known that until that he was in the process or in the midst of conducting the assessment of the student. And what is what in the record tells us that there is an invoice in the record where it's specifically Dr. Hastafi's invoice that indicates that the cost of the IEE was $800. And in there is a specific statement from Dr. Hastafi as to why it was less than what was contemplated. So even assuming that the district had a duty to file, the district in this case acted without undue delay and determined that the district unnecessarily delayed in filing for due process because it did not perform simple math and inform parents of the amount that their chosen assessor's costs differed from the SELPA's cost criteria. Yet the district court acknowledged that, quote, no specific statute or regulation requires the district to itemize a particular evaluator's fees. And, end quote, and student failed to identify any authority for that proposition as well. Neither the IDEA nor its regulations require the district to provide this specific information. And even assuming the district had an obligation to inform parents of the amount by which the parents chosen assessor exceeded the district's cost criteria, the evidence in the record indicated parents were provided that information, provided the information the district court stated the district did not provide. In fact, student conceded that in his briefs, indicating that parents knew Steffi's cost and the district's cost criteria. And that's supported in the record. This was also supported from specific testimony from parent in which she acknowledged that she was familiar with and had read the district's IEE policy and had obtained information directly from Dr. Steffi regarding his rates, which she then provided to the district. This was also supported by email communications between the district and Dr. Steffi on which parent was copied that included information about Dr. Steffi's rates and in which Dr. Steffi informed the district that the cost of his assessment would not exceed $2,500, nearly 150% above the district's criteria. Finally, there's also testimony from parents advocate that he had a pre-existing relationship to Dr. Steffi, referred other clients to Dr. Steffi prior to student's case, received direct services from Dr. Steffi and demanded that Dr. Steffi conduct a visual processing IE in most of the cases he's on and therefore he had information about Dr. Steffi's charges for IEEs. These are all facts student conceded in this brief. Despite the district having provided the self-accounts criteria to parents and parents admission that she had knowledge of Dr. Steffi's rates as she had provided this information to the district, for reasons not supported by the law, the district court nonetheless determined that the district should have specified the amount of differential to parents. But that information was irrelevant to whether or not there are any unique circumstances, specifically whether student had any complex medical, health, educational or psychological needs that would justify funding an assessor who charged 150% more than the district's cost cap. And in making the determination that the district was somehow obligated to inform parents of the difference between Dr. Steffi's rate and the district's IE cost cap, the district reached a decision on an issue that was never addressed during the due process hearing and aired when it found that the district violated the IDEA by failing to comply with the requirement to provide prior written notice as described in section 300503, which is found under a separate section of the IDEA. In any event, section 300503 does not require that districts inform parents of the amount by which their chosen assessor exceeds district's criteria. And I see, Your Honor, that I have three minutes left at this point. I'd like to reserve my remaining time. All right, counsel. Counsel. Good morning, Your Honors. May it please the court. I am Tanya Whiteleather and I represent student Elsie and his parents in this matter. I will begin briefly and thank you for giving us the heads up on the Trumbull matter. The Trumbull case, the Second Circuit just got it wrong. The Second Circuit links any IEEs to only to triennial or initial assessments. And I would ask the court if we may submit a brief five page supplemental. I have I literally could go on for an hour, but that would be inappropriate here given my timeline. 20 U.S.C. 1412 A3 talks about school districts ongoing affirmative duty to actively systematically seek out, identify, locate and evaluate children. State law, California Ed Code 56300 actively and systematically seek out individuals. While the Trumbull case talked to an FBA, we have a lot of other cases in the Ninth Circuit that address the need for IEEs and individual areas that are separate from a comprehensive triennial assessment. This would be for a number of reasons. Pasa Tampo versus Isawa 103 F3rd 796 at 802 and that's a 1996 Ninth Circuit. NB versus Hellgate Elementary School District 541 F3rd 1202 at 1209 and that's a 2008 Ninth Circuit. Timothy O versus Pasa Robles 822 F3rd 1105 1121 and that is a 2016 Ninth Circuit matter. These all talk about separate assessments that are separate from a comprehensive assessment. Well, Council, you would agree that the Ninth Circuit hasn't actually addressed the question that the Second Circuit addressed head on, right? We haven't actually analyzed the definition of evaluation in the regulations and the statute to see if it should refer to comprehensive analyses that are required or something. I don't think that exact language has been reviewed. I don't think the Second Circuit's case has been reviewed by the Ninth, but the districts all have a duty, states have a duty to conduct ongoing for public policy reasons alone. We often have students who are identified in several of these cases by the Ninth, identify that student is eligible, has an IEP and somebody indicates, a medical doctor, there is another problem. A clinical psychologist says this child has autism. That is separate and apart from a triennial and the parent brings in an IEE to the district requesting an evaluation in that area. And so that makes sense to me and I understand the practicalities that you're trying to raise, but the reality is our job is to construe what the law says and figure out what it actually requires. And if the law doesn't align with how things are going in practice, it's not the practice that governs, it's the law that governs. Wouldn't you agree? I agree, but I don't think there's any authority. If you look at Letter to Boss and Memo to McDonnell, which are both cited in my briefs, if the district has not assessed an area of need, it looks to, well, there are only timelines given for initial and for triennial. There is nothing in the law that says if you've just conducted a try and somebody, the medical doctor says, oh my goodness, you have an issue in this area. This child must have autism, but that's delayed. That is put off. There is no authority to support that. I'm not sure. So let's take that scenario. Say that there was a comprehensive evaluation that would meet the definition that the Second Circuit says the IDEA requires. And the parents say, well, you've missed an area. You've missed an important area for my child. And we want you to consider that area. And the school board refuses. Then wouldn't that under the Second Circuit reasoning trigger all of this? It seems like maybe it would, because at that point you have a comprehensive evaluation. There's something the parents disagree with about that comprehensive evaluation, i.e., that there's an issue missing, and therefore they push that issue and perhaps that triggers the statute, even under the Second Circuit's view. But that is not this case. This case is there was no comprehensive evaluation, nor was there a specific evaluation. We hadn't even gotten that far yet. And the parents want to do this thing, and the school district says, OK. But our question is, does that trigger all of these procedural requirements? And arguably, no. And we take the different position. If the district comes in to a parent of a student who has an IEP and says, yes, we'll do the IEE, the district then has, and there is some good law again cited in our brief, and the memos, the agency rulings, that if a district has failed to do something that should have been assessed, the parent can be entitled to an IEE. And that's reasonable. A child who has autism should be assessed in speech and language. That is something that goes along. We find many times school districts overlook it. And the parent says, look, you just did this try. Or in California, where we have a two-year statute limitation, the parent doesn't know until they get to year two and a half. And then they say, oh, look, my child has autism, and you know about it, but you never assessed in speech and language. We now have a problem. So we're going to be denied. The parent is going to be denied because the district failed. This is similar to Forest Grove, 557 U.S. 230, the 2009 case, which said because the district has not done something. In that case, it was districts claiming that children cannot access or receive comp ed because they hadn't previously been found eligible. Here, a district who had failed to assess in areas of suspected disability would get off the hook. And specifically here, where the district said, yes, we're going to conduct an IEE. We will do that. And then they failed to fund or file. And I think we have good authority that comprehends. I'd like to address a couple of claims. Ms. Santos agrees that the district agreed to fund the IEE. It was waived. There was never any claim at any time that it did not and never any claim that somehow it wasn't required to fund or file. That was part of what we did. The fees for Dr. Steffi, the district actually asked what would be the highest possible. And Dr. Steffi came back with something that was roughly 2382, but that was a kitchen sink sort of cost. It was not his general cost. It was not until the district, 84 days after, and we've had a district court, the Pajaro case, which is cited in the brief, which said 83 days was too long. It was 84 days. The district filed and said, oh, by the way, Dr. Steffi is charging 2382. And then the advocate involved before an attorney was involved said, that's not true. I worked with him. He's done assessments and contacted Dr. Steffi after having repeatedly asked the district, give us the information. What is your cost cap? The district's cost cap was not clear. As noted by the district court, the district school district didn't have a list of items that were a vision therapy. It had some visual acuity or this visual perception. There was no cost cap for vision therapy or visual processing. So there was nothing the parents could do to compare. The district waited, they didn't file. And as of May 2nd of 2018, they had not funded or filed and the parents sat. I gotta say, I struggle a little bit with the argument that you're making. I mean, I've worked on IDEA cases before and definitely seen circumstances where a school district is dragging their feet or not cooperating or trying to get away with doing as little as possible. And this record doesn't, doesn't give that message so much. I mean, throughout that period of time, the district is saying, we'll pay for it. Here's what our limits are. Here's our policy. Let us know if you have questions clearly where, you know, a dispute arises and the district offers to sit down and do ADR and have a conversation. And the answer from the advocate is we refuse. And perhaps if everybody had just sat down and had a conversation, particularly given that the advocate had worked with this doctor before, maybe things wouldn't have turned out the way they did. I just like on the record, it does not look like the school district was putting up a wall and saying we refuse to work with you. Like, how do you get there? They were, they absolutely were. They, they went to resolution. The parent had not hired an attorney, went to resolution early on, was told by the district, you have to make it confidential, which is not what resolutions are, but parent agreed, worked with what the district wanted and said, Oh, learned. Okay, fine. And although we're not talking about confidential, but when I was hired immediately went to the district and said, You'll only pay a thousand, not in any cost cap criteria. The parents will accept that, but the district, and this is yet the fees on the due process have yet to be litigated under 1415 that needs to go to the district court. And judge our judge Wilson was mistaken. He thought that the billing was for the due process. It was only as directed for the district court. It had nothing to do with the, the original hearing. So we went in, offered a thousand dollars attorney's fees because the parent had many, many communications with the district. Please tell us how he doesn't meet the cost cap. Please tell us what you think he's charging. And the district refused. Go go ask the self of the special educational plan. We don't know the parents could only get the information they got. They didn't learn what the district believed. Dr. Stephanie's charges were until December 5th. Of 2017. And they tried and there was good faith. And then there was a lot of communications back and forth. The district, and this is probably going to come up in the, the due process hearing. These case, the district said, no, we're only do this. If you wave all other issues. Which is not correct under five, six, five, Or 1415. Oh, Parents have a right. We didn't know what the comp ed might be for visual processing. And then we had some disagreements over fees, but the parents in, in this. Worked very reasonably. They communicated lots of communication back and forth, begging. For information from the district, which the district had no written duty. To give this information, but the district should have. If they were negotiating a price, which they claim was their reason for the delay, they should have said, oh, Dr. Stephanie's this much. And here's our actual written policy, which they didn't have. And the evidence was clear that the parent had worked or had some information from Dr. Stephanie. Didn't know what the district believe district believe it was almost twice as much. So that's what's that's what's in the record. Okay. So. Trumbull. Would cut off parents. From. Assessments in areas that had not been done in triennials. And that's a very, very big concern. I don't know how to get around that because that would just delay. Services. And if we're looking at requiring comprehensive assessments. Or for students. We're looking at. Only comprehensive and not these areas such as an FBA. We've got a number of the things I haven't mentioned the OSEP letters, the signs, which is OSEP. Six, seven, 2000, 34. I learned 34. And then we have the questions and answers on discipline procedures. 2009. Which talks to the need to do assessments. For students, even though. Those assessments were not part of a comprehensive or triennial assessment. The. I think it's very important. That the, the parents were backed into a corner in this matter. That they tried to communicate repeatedly with the district and tried to work with them. And did not, did not get cooperation or information and the district delay. They offered and agreed to the IE. The issue as far as attorneys fees. Again, that has not been before the district court under 1415. It needs to go a, it needs to go to the court. I would like to reserve this a little bit of time. If I may. I cannot hear. So you don't get to reserve time. Thank you. I know that they were taking our case as well as their case. Are we going to discuss the attorney's fees case? Yes. So we were going to do that separately. Cause I, well, no, it's all combined, but if you want to address that at this point, then on rebuttal. Ms. Santos can address that. And then we'll give you a moment for the attorney's fees. Thank you. If you would just go ahead and address the attorney's fees portion, like. Just, I think that we put everything in the brief. The, the district court was appeared to not understand that what was filed. In the attorney's fees matter was only for the district court as it was directed. It hasn't the due process matter has not been before the court as is required under 1415. It has not been heard the evidence discussion, the back and forth. Regarding the justification has not yet been determined by the district court. So any determination as to the due process hearing and what went on there. Has not yet been to the court. It's premature. And cutting off of 90%. This is a matter I think should probably be returned to the court for further determination. Why should it be returned to the court? If the court already decided what amount should be awarded. Because the court indicated a 90% reduction. For no reason stated. The court is required to, if it's doing more than the 10% haircut to indicate what, what the attorney has done incorrectly. There were glittering generalities as to the district. The attorney did non attorney work or clerical work or duplicate. No identification of those things. And that's very clearly required. The. This, this defeats the purpose of IDEA. If somebody has done something incorrectly. That's that's fair game. We're an attorney and in the district court, there was nothing that the district court found. That that I had done wrong. That parents should be cited for. So that, unless there is something specifically done wrong, that should not be reduced in a 90% reduction. Is draconian. All right. Thank you. Thank you, counsel. We'll hear from the Santos. And then if necessary, you may rebut on the attorney's fees portion. Santa. Thank you, your honor. Again, throughout this process, the district was attempting to work collaboratively with the parents. It agreed to fund the visual processing. Almost immediately. And then when parents chose an assessor who did not meet the criteria, It provided the parents with multiple opportunities. To provide any unique circumstances that would justify an exception to the policy. And there are several correspondence between the parties regarding that. It also gave parents an opportunity to select a different assessor. And offered to participate in alternative dispute resolution. After however, the party subsequently did reach impasse regarding parents chosen assessor. And parents advocate directed the district to file for due process. At which point the district conservatively filed for due process in hopes to resolve. The party's impasse and the record supports that. Student relies on Pajaro. But that case is distinguishable. In that case, the delay was unexplained. And by contrast, the district agreed to the IE in this case and can continue to discuss the provision of the IE through a series of letters. And this case is more like right in where, in that case, the parties continue to discuss the provision of the IE through various correspondence. The first indication of impasse did not occur until the advocate directed the district to file for due process, which was on November 15th, less than three weeks before the district filed for due process. With regard to students reliance on letter to bow. In that particular advisory opinion, OSIP had stated that if a parent disagrees with an evaluation because a parent has a right to request an IE at public expense to fill in the gap of the district's evaluation. And students reliance on that case is an opposite because bows reaffirms that the district must have assessed a student first before a parent can request an IE at public expense. So students interpretation of bows is not consistent with 300 502. And I just like quickly would like to address. Students arguments regarding attorney's fees. With regard to attorney's fees, students not entitled to attorney's fees because he was not the prevailing party under the IDEA. To be a prevailing party, the plaintiff must have obtained some relief that materially alters the legal relationship. Of the parties that's traditionally sanctioned. Technical or de minimis relief is not sufficient. The sole remedy students thought in this case was funding for Dr. Stephanie's IE. At the outset, the district agreed to fund that IE almost immediately. While the parties were in disagreement regarding whether parents chose an assessor. Met the cost cap. When the district learned that Stephanie's IE fell within the cost cap, it immediately agreed to reimburse parents for that assessment. This case needlessly proceeded to hearing and was then appealed. On remand, OH did not grant student his requested relief because the district had already offered to do that prior to the beginning of the proceeding. The only remedy OH ordered was a district. To send a memo to certain staff members regarding the district court's order. This was a simple isolated act. Act. This was not a remedy that student requested. Student did not obtain prevailing party. Staff and therefore should not have been awarded any attorney's fees. Notably student does not address this in his reply brief. I see that I'm out of time. District respectfully would request that the ninth circuit reverse. Thank you. Counsel. Anything else on the attorney's fees, Ms. White leather. Yes, your honor. We did not prevail at the due process hearing. Although we had. Responded to every single offer. And tried to negotiate. And that's something that needs to be addressed by the district court. We went to the district court. District court reviewed the record. Made a finding remanded and we did prevail. In fact, Prior to the hearing. I had sent out a letter indicating an offer. We would settle. We continue to send out offers. We have not. Attempted to resolve. So council, what, what was the nature? Of your prevailing. What did you get? That causes you to say that you're a prevailing party. When you win anything that is. For the student or that will change what is being done. A policy. Well, there has to be a change in the relationship between the parties. And there was. What was the change? In that. What did the district have to do that? It didn't already do so. If they already agreed to pay. The district. Well, that's one of those things that we had to fight for. Because they hadn't paid even as of may 2nd, the day of hearing. And it took 84. It's the magic number in this case. It took 84 days for them to even begin. To pay. So there was a great reluctance and dragon heels. But what we thought. The ultimate, the fact that they ultimately paid. It was how you prevailed. No. They'll at the district court. No, what we got when we returned and got a finding that their procedures. We're incorrect that they were unnecessarily delaying funding or filing. And when we had ultimately received months later, The payment that we had sought in the first matter. We got the vindication from the district court. And we also received an order that the staff be told and reminded of the procedures. That's the student is still a student in the district. The student has requests. Or he was at the time that we got that. And the student has needs. For further assessments. This is something that benefits. The student and it's a part of the Anaheim case. Which I believe I cited in the record. That is. Even a minimal. A minimal award. And entitled to attorney's fees. And this is a very important thing. Because the parents tried very hard to work the district. The district was not collaborative. The district would not work with a parent and simply say, okay, thousand. Because the parents agreed to pay everything else. The district would not work with a parent and simply say, okay,  Because the parents agreed to pay everything else. Over a thousand from the get-go. All right. Are there any other questions from this white leather? All right. Thank you to both council for your helpful arguments. The case just argued is submitted for decision by the court. That completes our calendar for the day. And for the week we are adjourned.
judges: Rawlinson, Linn, Hunsaker